**U. S. ex rel. CONSOLA v. KARNUTH,
District Director of Immigration.**

**No. 68.**

District Court, W. D. New York.

Feb. 9, 1939.

Israel Rumizen, of Buffalo, N. Y., for relator.

George L. Grobe, U. S. Atty., by R. Norman Kirchgraber, Asst. U. S. Atty., both of Buffalo, N. Y., for respondent.

**462**

KNIGHT, District Judge.

On August 12, 1938, an application was made for a writ of habeas corpus to inquire into the cause of detention of the relator. The warrant of deportation on which the relator was then held charged and was based on an alleged illegal entry on October 7, 1937. This court held in an opinion rendered on December 7, 1938, that there was no illegal entry on the 7th of October, 1937, but found that there was an illegal entry in or about April, 1929. The court directed release of relator within twenty days after service of the order on the opinion of the court, provided another warrant were not issued charging an illegal entry as of the last-mentioned date. Within the twenty days aforesaid, a new warrant of deportation, dated December 16, 1938, charging an illegal entry at an unknown port, in or about April, 1929, was issued, and the pending proceeding was instituted to determine its legality.

■ Several grounds are urged as a basis for the discharge of relator. The assertion of counsel that the description of the charge in the warrant is in the alternative, (charging commission of a crime or admission of the commission,) is an error. That is not the fact. Confusion seems to have arisen from the directions for its issuance. The warrant charges that the relator is subject to deportation by virtue of Section 19 of the Immigration Act, 8 U.S.C.A. § 155 "to wit: the Act of 1917, in that he admits having committed a felony or other crime or misdemeanor involving moral turpitude prior to entry into the United States, to wit: armed robbery," and that solely. It is accordingly unnecessary to consider the numerous authorities cited on the point made.

■ It is urged that the relator was entitled to a hearing after the granting of the order aforesaid. Authorities are cited holding that the relator is entitled to a fair hearing and that there must be evidence of substance to support a warrant of deportation. That is the law. Relator had such a hearing. He was then represented by counsel. He admitted that he had committed the crime of armed robbery at Beamsville, Canada, on April 16, 1929; that on May 7, 1929, he was arrested at Brockton, Mass., in the United States, and on May 22, 1929, at St. Catherines, Canada, he was convicted of such crime on a plea of guilty and was sentenced to imprisonment for 15 years. A certified copy of the record of such conviction was made a part of the record. The law does not require a useless hearing. The only suggested reason for a new hearing is to enable the relator to testify that he did not admit the commission of a crime, because, by reason of the Canadian statute relative to the effect of the service of a sentence, there was no crime. An inquiry anew in this respect would be entirely immaterial. The Canadian statute has no relevancy, as hereinafter shown. A further hearing would elicit no new facts.

■ The warrant of deportation is claimed to be void because there was no evidence to establish that the entry was made through any particular port, or in fact made into the United States in or about April 1929. No law requires the government to establish the place of entry. Such a provision would in a great measure prevent the purpose of Section 19, supra. It is sufficient to again point out that relator admitted the commission of the aforesaid crime in a foreign country, in April, 1929, and he was arrested in the United States in May, 1929. The fact that relator was extradited to Canada following his arrest in the United States and was returned to the United States subsequent to service of his prison sentence has no bearing upon the entry in or about April, 1929.

■ The cancellation of the first warrant of deportation does not void any of the proceedings theretofore had. No action was taken by the Department of Labor, save to order the issuance of a new warrant of deportation. As pointed out by the government, the situation is analagous to a criminal case in which a defendant had been convicted and sentenced and then brought back for a re-sentence on account of some illegality in the sentence. Nor does the order of this court upon the application for the first writ affect in any way the proceedings preceding it. All the facts then before the court are before the court now. Counsel in discussion of this proposition confuses the warrant of arrest by which the relator was brought into the proceeding for deportation and the warrant of deportation which follows such proceedings.

■ Chapter 146, Sec. 1078, Criminal Code of Canada, Rev.Stat., provides that "When any offender has been convicted of an offense not punishable with death, and has endured the punishment adjudged, * * * the punishment so endured shall, as to the offense whereof the offender was

so convicted, have the like effect and consequences as a pardon under the great seal." It is argued that by virtue of this Act relator was unequivocally exonerated not only of the offense, but the conviction, and therefore could not have admitted the commission of the crime. The Canadian Statute has no bearing on the instant case. We are concerned with the right of deportation as based upon the United States Statutes. Such statute, Title 8, Sec. 155, U.S. C.A. 39 Stat. 889, Sec. 19, exempts from deportation aliens who have been convicted of a crime involving moral turpitude and have been pardoned. That statute does not apply to pardons in foreign countries, (Mercer v. Lence, 10 Cir., 96 F.2d 122; Weedin v. Hempel, 9 Cir., 28 F.2d 603), though it has been held to apply to state statutes. U. S. ex rel. Malesevic v. Perkins, D.C., 17 F.Supp. 851.

Relator's attorney seeks to distinguish these decisions of the United States courts upon the ground that in the cases considered the aliens were held liable to deportation because they had been "convicted of a crime involving moral turpitude," while in the instant case the charge is that the alien "admits the committing of a crime involving moral turpitude." The simple answer to such argument is that, since the foreign statute is not applicable, the crime is not "blotted out" and relator certainly could admit the commission of the reality— the crime itself.

 Relator cites several cases: (Ex parte Garland, 71 U.S. 333, 380, 4 Wall. 333, 18 L.Ed. 366; Knote v. United States, 95 U. S. 149, 24 L.Ed. 442, and Hempel v. Weedin, D.C., 23 F.2d 949; reversed 28 F.2d 603), to show the effect of a pardon. There is no question that "a pardon reaches both the punishment prescribed for the offence and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense." 71 U.S. 380, 81 L.Ed. 366, supra. The point, however, here is that there is no pardon to which the United States statute has application.

The relator is not aided by the construction placed upon Section 1078, supra, by the Supreme Court of Canada. In re Royal Prerogative of Mercy upon Deportation Proceedings 59 Canada Criminal Law Cases 301 held that an alien who had been convicted, and either served all of the prison sentence imposed or served a term as reduced by operation of statute or act of clemency, was thereafter subject to deportation by virtue of the provisions of the deportation act. It was also held that the words "punishment adjudged" in Section 1078 mean service of the sentence imposed, not as commuted. In the instant case the relator did not serve the sentence imposed.

Relator does not become a citizen by virtue of the fact that his father filed a petition to become a citizen while relator was an infant. The pertinent statute, Title 8 section 8, U.S.C.A., is plain in language and clear in meaning. The child of parents naturalized during that child's minority is deemed a citizen. The statute specifically provides that the naturalization shall take place during the minority of the child. It is to be strictly construed. There could have been no naturalization during minority. Petition of Sproule, D.C., 19 F. Supp. 995; Johnson v. Nickoloff, 9 Cir., 52 F.2d 1074; United States v. Uhl, 2 Cir., 211 F. 628; and cases therein cited.

The writ must be dismissed.